UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISA DAJLANI,

    Plaintiff,

v.

WAL-MART STORES EAST, LP

    Defendant.

Case No. 20-12983
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13]**

Denisa Dajlani was shopping at the Dearborn Walmart, operated by Wal-Mart Stores East, LP, when two three-drawer chests and the top metal shelf holding them up fell off an end-of-aisle display and injured her arm. Dajlani states that the injury has prevented her from continuing to work as a hair stylist.

In time, Dajlani sued Wal-Mart for negligently maintaining a dangerous condition in its store and not exercising due care toward her as a customer. Wal-Mart now seeks summary judgment. Having thoroughly reviewed the summary-judgment record, the Court will GRANT IN PART and DENY IN PART Wal-Mart's motion for summary judgment for the reasons set out below.

I.

A.

Dajlani was shopping at the Wal-Mart store in Dearborn, Michigan with her son the morning of September 18, 2017. (ECF No. 13-1, PageID.135, 164–165.)

Dajlani was looking to purchase a new remote control for her television. (*Id.* at PageID.167.)

As Dajlani was walking down the main aisle of the store toward the electronics department, two three-drawer plastic chests and metal shelving fell off the end-of-aisle display (an end cap) and hit her arm. (*Id.* at PageID.167, 169.) As shown below, the drawers were made out of brown plastic rattan and estimated to weigh less than three pounds:



(ECF No. 13-2, PageID.237; ECF No. 15, PageID.451 (image of drawers).) After hitting Dajlani's arm, both the drawers and the metal shelving landed on the floor. (*Id.* at PageID.172–173; ECF No. 15, PageID.446.) Dajlani's arm was red, numb, and swollen after she was hit. (*Id.* at PageID.158.) She also was not able to move her fingers and had pain from her shoulder to her fingers. (*Id.*)

Keith Ford, a Wal-Mart employee, heard the crash and went to see what happened. (ECF No. 15, PageID.446.) Dajlani states that after a Wal-Mart employee (presumably Ford) arrived, he cleaned up the drawers and shelf "in a second." (ECF

No. 13-1, PageID.174.) As the shelf was being reinstalled, however, Dajlani saw that one of the hooks attaching the shelf to the end cap was sideways and that the shelf had not been sturdily hooked into the end cap. (*Id.* at PageID.180.)

Sara Koolwick and Joshua Spears, two co-managers of the Dearborn Wal-Mart, were in the store the day Dajlani was injured, but neither saw the incident. (ECF No. 13-2, PageID.272; ECF No. 13-3, PageID.295, 302, 308.) Koolwick took a report from Dajlani. (ECF No. 13-2, PageID.240.) And she took pictures of the shelf and drawers that fell on Dajlani—but only after they had been replaced on the end cap. (*Id.* at PageID.249.) Spears did not see the shelf and drawers either before they had been replaced. (ECF No. 13-3, PageID.295, 302, 308.) Spears stated that Koolwick took the lead on the incident report for Dajlani's accident. (*See id.* at PageID.299.)

The report briefly describes that the shelf fell on to the customer's left arm in the "Hardware A.A.," or hardware action alley. (ECF No. 15, PageID.443; ECF No. 13-2, PageID.241.) Koolwick also filled out a witness statement, but it merely recounts what Dajlani told her and that she observed swelling and bruising on Dajlani's left arm. (ECF No. 15, PageID.445.) Dajlani was certain that she did not hit the display with her shopping cart. (*See id.*; ECF No. 13-1, PageID.177.) Ford also wrote a witness statement corroborating that he heard a crash and when he arrived, he saw two three-drawer chests and gray shelving on the ground. (*Id.* at PageID.446.)

Not much happened on Wal-Mart's end after completing the incident report. Koolwick stated that either herself, the department manager, or the asset protection manager would have inspected the display after it had been reinstalled but could not

3

remember who led the inspection or if the cause of the incident was determined. (ECF No. 13-2, PageID.249–250.) Koolwick testified that the one prior time she experienced shelves falling off an end cap was when an electric cart had run into it, causing the shelf to "swing out." (*Id.* at PageID.268.) Spears testified that he had never seen a shelf fall off an end cap, but that it was a "very common occurrence" for customers to hit the end cap with a cart and cause the shelves to destabilize. (ECF No. 13-3, PageID.301, 307.) Spears would regularly tell his employees to fix the end caps if he saw the frame was loose or fix them himself. (*Id.* at PageID.301–302.)

As for Dajlani, after giving her report to Koolwick, she continued shopping. (ECF No. 13-1, PageID.188.) But after she left Wal-Mart and dropped her son off at home, she went to the emergency room. (*Id.* at PageID.193.) Dajlani claims she is unable to work as a hair stylist due to the pain in her arm from the accident, and that she continues to experience swelling in the area that prevents her from holding her arm up or lifting things with it. (*Id.* at PageID.126.)

### B.

In September 2020, Dajlani filed this action against Wal-Mart, alleging Wal-Mart was negligent in causing her injuries. (ECF No. 1-2.) She brought a premises-liability claim (Count I) and a nuisance claim (Count II). (ECF No. 1-2, PageID.10–12.) Wal-Mart removed the case to federal court based on diversity jurisdiction. (ECF No. 1.)

After discovery, Wal-Mart filed a motion for summary judgment. (ECF No. 13.) Given the clear briefing and record, the Court now considers the motion without further argument. *See* E.D. Mich. LR 7.1(f).

## II.

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment requires the court to view all evidence in the light most favorable to the nonmoving party and is appropriate only if the evidence in the record is so one-sided that no reasonable jury could find for that party. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 339 (6th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## III.

The Court will consider Dajlani's premises-liability claim on two theories: a standard negligence theory and then a res ipsa loquitur theory, which Dajlani raised in response to this motion. *See Pugno v. Blue Harvest Farms,* LLC, 930 N.W.2d 393, 405 (Mich. Ct. App. 2018) (holding that while res ipsa loquitur can apply to premises liability cases, the question of whether it does is answered on a case-by-case basis).

As this is a diversity case, the Court will apply Michigan law. *See Carhartt, Inc. v. Innovative Textiles, Inc.*, 998 F.3d 739, 742 (6th Cir. 2021). When the Michigan Supreme Court has not decided a precise issue, as in this case, the Court is "tasked

5

with predicting how the court would resolve the issue from all relevant data, including decisions of the state appellate courts." *Id.*

A.

To prevail on a standard premises-liability claim, Dajlani must prove that (1) Wal-Mart owed her a duty, (2) it breached that duty, (3) the breach was the cause of her injuries; and (4) she was damaged. *See Lapczynski v. Walmart Stores*, 761 F. App'x 530, 534 (6th Cir. 2019); *see also Mouzon v. Achievable Visions*, 864 N.W.2d 606, 608 (Mich. Ct. App. 2014).

Wal-Mart argues that Dajlani cannot prove breach or causation. Dajlani disagrees.

1.

Wal-Mart contends that it could not have breached its duty to Dajlani because it did not have notice that the end cap was dangerous.

As neither party disputes that Dajlani was a business invitee, Wal-Mart owed "a duty to use reasonable care to protect [Dajlani] from unreasonable risks of harm posed by dangerous conditions" on its premises. *See Hoffner v. Lanctoe*, 821 N.W.2d 88, 91 (Mich. 2012). Wal-Mart breaches its duty to use reasonable care when it "knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Id.* at 94. In other words, Dajlani must show that Wal-Mart had actual or constructive notice that the shelf on the end cap was unstable.

There is no evidence in the record that Wal-Mart had actual notice of the end cap's instability. Although Koolwick stated that management and other employees conducted inspections, the record is not clear as to when the particular end cap that fell on Dajlani was last inspected. (*See* ECF No. 13-2, PageID.256 ("End caps and displays can be changed out every day, depending on how fast the item sells;" *id.* at PageID.273.) Spears similarly does not remember anything pertaining to the specific shelf, including any inspections. (ECF No. 13-3, PageID.301 ("I cannot speak to that specific fixture [sic] and that specific shelf.").) And Dajlani is unaware of any previous issues or reports involving this end cap. (ECF No. 13-1, PageID.190–191.)

Dajlani argues that Koolwick and Spears' testimony that "they were aware of a propensity of these shelves to become dislodged" shows that Wal-Mart had actual notice of the unstable end-cap. (ECF No. 15, PageID.336.) But a general awareness that conditions *could* become dangerous is not the same as knowing that conditions *are* dangerous. If it were, then actual knowledge would be found in almost every premises liability case involving common accidents, like slip-and-falls. And that is not what the case law supports.

And even accepting Dajlani's argument that knowledge that the shelves had a propensity to fall satisfies the actual knowledge test, the testimony does not show that end cap shelves had a "propensity" to fall. Koolwick testified that she was not aware of any incidents while she worked at Wal-Mart of shelves falling absent someone hitting them or removing them. (ECF No. 13-2, PageID.283.) Likewise, Spears testified that he has never specifically seen the shelves fall off an end cap

7

frame—only that he "could see how it could fall[.]" (ECF No. 13-3, PageID.307.) So there is no evidence that Wal-Mart employees knew that shelves and merchandise have a "propensity" to fall off end caps, let alone that this specific end cap was unstable and dangerous.

Without actual notice, Dajlani must show that Wal-Mart had constructive notice. "Where the possessor is the one who created the condition, knowledge of the condition is imputed to the possessor, but where the condition is created by a third person, there is a factual question regarding whether the possessor should have reasonably discovered the condition." *Pugno*, 930 N.W.2d at 404. If the condition is created by a third-party, constructive notice depends on either the "character of the condition or the duration of its presence." *Lowrey v. LMPS & LMPJ, Inc.*, 890 N.W.2d 344, 350 (Mich. 2016).

The only piece of evidence in the record showing that Wal-Mart created the condition is Dajlani's testimony. Dajlani testified that she did not hit the shelf with her cart and did not see anyone else do so. (ECF No. 13-1, PageID.177.) She further testified that she thought the shelf was not hooked in the notches properly, causing it to fall on her. (ECF No. 13-1, PageID.180.) But she also testified that she does not "know" why the shelf fell. (ECF No. 13-1, PageID.181.) And neither Koolwick nor Spears can testify as to what happened with this particular end cap as they did not witness the incident, arrived at the scene after the end cap had been put back together, and did not conduct a follow-up investigation other than filling out an incident report. Thus, there is insufficient evidence that Wal-Mart created the

condition, so knowledge of the condition cannot be imputed onto Wal-Mart. *See Ramadan v. Home Depot Inc.*, 504 F. Supp. 3d 695, 709 (E.D. Mich. 2020) (holding that when there are multiple possible theories as to the alleged circumstances that caused the accident, the case is still in the "realm of conjecture" (quoting *Guthre v. Lowe's Home Ctrs., Inc.*, 204 F. App'x 524, 527 (6th Cir. 2006))).

As noted above, none of the deposed witnesses recall details about the end cap prior to the incident, so there is no evidence of how long it was unstable for.

Wal-Mart had constructive notice, says Dajlani, because Spears testified that customers knocking into end caps and causing merchandise and shelves to fall is a "very common occurrence." But it is not clear whether Spears meant that it is a very common occurrence for customers to knock into the end cap, or for merchandise and shelves to fall off the end cap, or both. Spears' testimony that he has never seen the shelves fall off an end cap suggests that he was referring to customers hitting the end cap with their carts, rather than that shelves and merchandise regularly fall off the end cap. And Dajlani points to no other evidence that this Wal-Mart store or Wal-Mart in general has a recurring issue of merchandise and shelves falling. So the Court cannot find that Wal-Mart had constructive knowledge of this dangerous condition.

2.

Wal-Mart also contests whether Dajlani can show causation.

The Court finds that there is no direct evidence as to the actual cause of the incident. Dajlani states she does not "know" what caused the shelf to fall, but she saw that the "hooks in one side" were not inside the notches, but were "sideways," and

9

that perhaps the shelf was not "hooked very good." (ECF No. 13-1, PageID.180–181.) Koolwick testified that she did not inspect the shelf after the incident or discuss with anyone what caused the shelf to fall. (ECF No. 13-2, PageID.250.) Koolwick did "guess," however, that the shelf fell due to someone making contact with the railing. (*Id.* at PageID.275.) While both Koolwick and Dajlani offer their opinions as to how the shelf fell, neither party provides anything other than conjecture, which is insufficient to create a genuine issue of material fact for causation. *See Falmouth Cooperative Co. v. Bonteko*, No. 348568, 2020 WL 6110928, at *3 (Mich. Ct. App. Oct. 15, 2020) (quoting *McNeill-Marks v. Midmichigan Med. Ctr.-Gratiot*, 891 N.W.2d 528 (2016)).

So without both notice and causation, Dajlani's premises-liability claim cannot proceed on the standard theory.

B.

Dajlani's claim still has a leg to stand on, however, based on a theory of res ipsa loquitur.

Res ipsa loquitur is an evidentiary rule that allows a plaintiff to "create an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *DeBusscher v. Sam's East, Inc.*, 505 F.3d 475, 481 (6th Cir. 2007) (citing *Jones v. Porretta*, 405 N.W.2d 863, 872 (Mich. 1987)). "Ultimately, res ipsa loquitur is 'merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event

and the defendant's relation to it.'" *Ramadan*, 504 F. Supp. 3d at 709 (quoting *Pugno*, 930 N.W.2d at 405).

To establish negligence using res ipsa loquitur, Dajlani must establish that (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) the event must have been caused by an agency or instrumentality within the exclusive control of the defendant; (3) the event must not have been due to any voluntary action or contribution on the part of the plaintiff; and (4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff. *Ramadan*, 504 F. Supp. 3d at 709 (citing *Wilson v. Stilwill*, 309 N.W.2d 898, 905 (Mich. 1981)); *see also Pugno*, 930 N.W.2d at 404. In addition, a plaintiff must also "produce some evidence of wrongdoing beyond the mere happening of the event." *Pugno*, 930 N.W.2d at 404.

Wal-Mart argues that Dajlani cannot establish the first two elements of res ipsa loquitur. And in cursory fashion, Wal-Mart also says that she cannot produce evidence of wrongdoing beyond the fact that the end cap shelf fell on her.

1.

Starting with the first element, there is a genuine dispute that this is the type of incident that ordinarily does not occur absent someone's negligence.

This element boils down to whether this case is closer to a trip-and-fall (which ordinarily occurs without negligence) or a falling chandelier (which does not ordinarily occur without negligence). Case law on this point is instructive. Typically, cases involving tripping or slipping and falling have been found to occur absent

11

negligence. *Ramadan*, 504 F. Supp. 3d at 709–710 (surveying cases). In contrast, in *DeBusscher*, the Sixth Circuit held that a jury could determine whether res ipsa loquitur applied to an incident where a basketball hoop that was on display in the store tipped over and injured the plaintiff. 505 F.3d at 481. Specifically, the Court found that a basketball hoop on display should not tip over, even if plaintiff's seven-year-old child touched the hoop. *Id.* And in *Ramadan*, where the plaintiff was hit in the head by falling pieces of metal trim while walking down a Home Depot aisle, the Court held that "raceway channels [which hold up loose cables] do not just fall absent some type of negligence. . . ." 504 F. Supp. 3d at 710. The distinction between objects falling—as opposed to people falling—is further supported by the Second Restatement of Torts, which lists "plaster unexpectedly fall[ing] from the ceiling, when a sign falls from a building, or when a chandelier falls from its fixture" as examples of incidents that typically do not occur absent negligence. *See Pugno*, 930 N.W.2d at 405.

Dajlani's incident is closer to *Ramadan* and *DeBusscher* than a slip-and-fall or tripping incident. Dajlani testified that the three-drawer chests and the metal shelving from the end cap fell on her as she passed by it. (ECF No. 31-1, PageID.172–173.; ECF No. 15, PageID.446.) Just as the basketball hoop and raceway channels had fallen unexpectedly on the plaintiffs in *DeBusscher* and *Ramadan*, respectively, here Dajlani was injured by falling drawers and shelves. And as noted by the *Ramadan* court, "it is fairly uncommon for an untouched item to fall on a customer's head while merely walking down the aisle of a store." *Ramadan*, 504 F. Supp. 3d at

12

710. This supports the conclusion that a jury could determine that merchandise and end cap shelves ordinarily do not fall absent someone's negligence.

Further, the Court in *Ramadan* relied on the sequence of events to support its conclusion that the accident there ordinarily does not occur absent negligence, which is nearly identical to the sequence of events here. In *Ramadan*, an employee testified that if the raceway channels were not secured, that would need to be fixed. 504 F. Supp. 3d at 710. Similarly, Spears testified that if he saw the frame of the end cap become loose and "compromise the integrity" of the end cap, "we would fix it." (ECF No. 13-3, PageID.301.) In fact, Spears states that "that's something we were always having people fix." (*Id.*) And in *Ramadan*, the plaintiff testified that the channels were not secure and as he neared them, the channels struck him. *Ramadan*, 504 F. Supp. 3d at 711. Likewise, Dajlani testified that the shelves were not properly hooked into the end cap and as she passed them, the shelf and drawers fell and hit her. (ECF No. 13-1, PageID.172–173, 180.) Thus, the sequence of events here also supports a jury finding that absent negligence, this incident would not typically occur.

Finally, the Court takes a moment to note that this case is distinguishable from *Johnson v. Meijer*, where the Sixth Circuit held that a case could not be submitted to a jury on a theory of res ipsa loquitur where it was foreseeable that a fire extinguisher "might fall to the floor if struck by a loaded shopping cart." 551 F. App'x 259, 260 (6th Cir. 2014). In *Johnson*, the plaintiff struck the fire extinguisher with her shopping cart. *Id.* But here there is no evidence that Dajlani hit the end cap with her shopping cart and caused the shelf to dislodge and fall. Dajlani testifies that she was passing

13

by the end cap and that her cart did not hit it. (ECF No. 13-1, PageID.177.) Neither Spears nor Koolwick saw the incident and could not show that Dajlani (or anyone else) hit the end cap with their cart. (ECF No. 13-2, PageID.278; ECF No. 13-3, PageID.301.) In fact, Dajlani states she saw no other customers around her before or after the incident, and Wal-Mart does not counter this testimony. (*See id.* at PageID.179.) So there is no evidence that Dajlani or anyone else hit the end cap to cause the shelf to fall. And even if another customer hit the end cap, the Court cannot find that it was foreseeable that the shelf would fall as a result given that neither Koolwick nor Spears have seen shelves fall more than once during their time at Wal-Mart.

Therefore, Dajlani has presented sufficient evidence for a jury to conclude that merchandise and shelves falling off an end cap is the type of incident that does not ordinarily occur absent negligence.

2.

Wal-Mart also argues that there is insufficient evidence of the second element—that the drawers and shelf were within its exclusive control.

The case law analyzing this element suggests a distinction between falling merchandise and falling fixtures. Many cases applying Michigan law support finding that merchandise that is displayed in stores is not within the exclusive control of the defendant because customers also handle displayed merchandise. *See Valdes v. Menard, Inc.*, No. 344073, 2019 WL 6340263, at *4 (Mich. Ct. App. Nov. 26, 2019) (holding a box of tiles on display was not within the exclusive control of defendant);

14

*Boyer v. Target Corp.*, No 251790, 2005 WL 602563, at *2 (Mich. Ct. App. Mar. 15, 2005) (holding that display fireplace was not in the exclusive control of defendant); *Vance v. TJX Companies, Inc.*, No. 10-13510, 2011 WL 3840341, at *5 (E.D. Mich. Aug. 30, 2011) (holding that a wall hanging was not in the exclusive control of defendant). So Dajlani could not use res ipsa loquitur to show that Wal-Mart was negligent if she was only injured by the falling drawers.

But Dajlani asserts that it was not just the three-drawer chests that fell off the end cap, but the metal shelf that held up the drawers as well. In other words, Dajlani claims that a fixture installed by Wal-Mart fell and caused the drawers to fall. The case law supports finding that the shelves were in the exclusive control of Wal-Mart. In *Ramadan*, the Court found that because defendant's employees installed the brackets that held up the raceway channels, they were fixtures that a jury could find were in defendant's exclusive control. Likewise, in *Correia-Massolo v. Bed Bath & Beyond*, the Court found that a shelf holding up a fan that collapsed could be in the exclusive control of defendant because it had installed the shelves as fixtures in the store. No. 08-14857, 2010 WL 3842352, at *5 (E.D. Mich. Sept. 27, 2010).

Here, Wal-Mart employees are responsible for building and installing the end caps, including the shelves. (ECF No. 13-2, PageID.236.) In fact, Ford, the first Wal-Mart employee to respond to the accident, reinstalled the shelves and replaced the merchandise almost immediately after the incident. (ECF No. 13-1, PageID.181.) Spears referred to the end caps as fixtures throughout his deposition. (*See* ECF No. 13-3, PageID.300); *see also Ramadan*, 504 F. Supp.3d at 713 (noting that witness

15

"repeatedly described the brackets as fixtures in his deposition testimony, suggesting he viewed the brackets as permanent, fixed structures"). And Koolwick testified that customers do not typically loosen or move shelves at Wal-Mart. (ECF No. 13-2, PageID.275.) As in *Ramadan* and *Correia-Massolo*, the Court finds that a reasonable jury could conclude that the end cap shelves were fixtures in Wal-Mart's exclusive control.[1]

Wal-Mart argues that since customers could bump the end cap displays with their carts and dislodge shelves, the shelves are not in Wal-Mart's exclusive control. But there is no evidence that the shelf that fell on Dajlani was dislodged in this manner. Dajlani states she did not hit the end cap with her cart, and that no other customers were around when she passed by. (ECF No. 13-1, PageID.177, 179.) Further, it would be more likely that Dajlani hit the end cap with her cart if she was attempting to maneuver around it in some way. But Dajlani testified she was walking in the center aisle past the end cap to get to a different section of the store. (ECF No. 13-1, PageID.167.) It is also not clear that a customer bumping an end cap can cause the shelf to fall off the end cap. (*See* ECF No. 13-3, PageID.306–307 (Spears testifying

---

[1] The Court notes that the different outcome under the standard negligence analysis and the res ipsa loquitur analysis results from different legal principles. Dajlani's failure to prove that Wal-Mart had knowledge of the dangerous shelf doomed her standard premises liability (negligence) claim. However, here, the inquiry is not focused on Wal-Mart having notice such that it breached a duty to address the dangerous condition, but rather whether a jury could find that Wal-Mart had exclusive control over the shelves such that "[t]he circumstances attendant on the accident are of such a nature as to justify a jury, in light of common sense and past experience, in inferring that the accident was probably the result of the defendant's negligence. . . ." *See Res Ipsa Loquitur*, Black's Law Dictionary (11th ed. 2019).

16

that he has never seen a shelf fall off of a destabilized end cap).) And since Wal-Mart presents no testimony or other evidence to the contrary, its theory that customers hit the end cap display does not merit holding that every jury would find that Wal-Mart did not have exclusive control over the shelf that fell. *See Morris v. Wal-Mart Stores, Inc.*, 330 F.3d 854, 862 (6th Cir. 2003) (holding that "it is inappropriate to conclude that *res ipsa loquitur* does not apply when factual disputes remain as to how the accident occurred and whether the instrumentality was in the defendant's control. Because such factual disputes remain in this case, the application of *res ipsa loquitur* is a question for the jury to decide.").

3.

Finally, Wal-Mart asserts that Dajlani has not shown any wrongdoing beyond the incident itself and should therefore not be permitted to submit this case to a jury on a theory of res ipsa loquitur.

The Court disagrees. There is some evidence of wrongdoing by Wal-Mart employees that would cause the shelf to fall off the end cap. Dajlani testified that she saw that the shelf might not have been hooked into the end cap properly when Wal-Mart employees were reinstalling the shelf. (ECF No. 13-1, PageID.180.) And as the Court established, Wal-Mart employees were responsible for building and installing the shelves, as well as inspecting them, even if the inspections were not routine. To that end, Spears conceded that an unstable shelf is something he would have other employees fix or he would fix himself if he noticed it. (ECF No. 13-3, PageID.301–302.) So unlike cases where the plaintiff admitted that the defendant did not

17

contribute to the incident, Dajlani has provided "some evidence" that Wal-Mart may not have installed properly or fixed the shelves after they were destabilized, which allowed a shelf to dislodge and fall.[2] *Cf. Moore v. Target Corp.*, 544 F. Supp. 2d 604, 608 (E.D. Mich. 2008) (plaintiff admits that the hook holding up the sign that fell did not break, become unlatched, and could not have failed); *Cooper-James v. Texas Roadhouse of Roseville*, No. 293797, 2010 WL 4868059, at *2 (Mich. Ct. App. Nov. 30, 2010) (holding that since the fallen sign could have been tugged and bumped by anyone, there was no evidence of wrongdoing).

Dajlani has shown a genuine dispute of fact as to how Wal-Mart could have done something wrong to cause the end cap shelf to fall, and therefore, she may use res ipsa loquitur to pursue her claim.

In sum, a reasonable jury could find that res ipsa loquitur applies to this case as there is a genuine dispute as to whether this is the type of incident that occurs absent negligence, whether Wal-Mart has exclusive control over the end cap shelf, and whether there is evidence of wrongdoing beyond the shelf and three-drawer chests falling.

---

[2] Again, the different legal principles underlying the notice requirement and res ipsa loquitur lead to different results here. While Dajlani has not provided sufficient evidence for a reasonable jury to impute knowledge onto Wal-Mart, in part because the dangerous condition could have been created by customers, she has provided some evidence to show wrongdoing beyond the event itself, whether that be a failure to install the shelves properly or a failure to fix the shelves after they had become destabilized.

IV.

Therefore, Wal-Mart's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Dajlani may only proceed to trial with her premises-liability claim on a theory of res ipsa loquitur. And since Wal-Mart did not move on Dajlani's nuisance claim, it also survives.

SO ORDERED.

Dated: November 15, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
